HOLLOWAY, Circuit Judge,
concurring and dissenting:
I join Part II-B of the majority opinion affirming the verdict in favor of Appellee Kellogg on her FLSA claim. As to her ADA claim, I must respectfully dissent because I conclude that the district judge correctly held that driving is a “major life activity” under the ADA. Accordingly, I would also affirm the verdict on the ADA claim.
This is an issue of statutory interpretation, and so we begin with the statutory language: “major life activity.” Congress chose to use broad language, employing only everyday terms, to express its intent regarding the scope of coverage of the Act. As the Supreme Court noted in Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), Congress had used almost identical language in the Rehabilitation Act of 1973. Congress was undoubtedly aware that the courts would imply from the use of an established term that Congress intended the terms to be construed similarly in the ADA, but Congress did not rely solely on that established practice. Instead, Congress specifically provided:
Except as otherwise provided in this chapter, nothing in this chapter shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 or the regulations issued by Federal agencies pursuant to such title.
42 U.S.C. § 12201(a).
Thus it is clear that Congress meant the term “major life activity” to have a wide reach and that we should construe it accordingly. Giving the words their understood and accepted meaning, keeping in mind that the use of this broad language is indicative of Congressional intent, and applying these principles in the context of modern life in our nation, I conclude that *1131 driving is clearly a major life activity, as the district judge held here.
The majority’s analysis seems to me to rest almost entirely on comparison of the importance of the activity of driving with the fundamental importance of activities listed in the EEOC regulation as examples of major life activities. But as the majority notes, the EEOC regulations do not command judicial deference.[1] Moreover, it is undisputed that the examples in the regulation are not exclusive. See Bragdon, 524 U.S. at 638-39, 118 S.Ct. 2196. It seems to me that the majority has displaced the conventional judicial task of giving ordinary terms their ordinary meaning and has implemented instead an approach that takes a list of examples from a regulation of undetermined authority as having set a floor for the meaning of the term “major,” without stopping to ask whether the result is consistent with the words Congress chose to express its intent.
The majority notes that the only two circuits that seem to have addressed this question directly have held that driving is not in itself a major life activity. I am not convinced that these holdings are correct. In Chenoweth v. Hillsborough County, 250 F.3d 1328 (11th Cir.2001), the entire analysis consists of little more than three sentences. Like the panel majority in the present case, the Chenoweth court seems to give controlling weight to the EEOC regulations. Aside from the observation that driving is “conspicuously different in character from the activities that are listed,” the Chenoweth court also declares that it “would at the least be an oddity that a major life activity should require a license from the state....” 250 F.3d at 1329. This analysis is disconnected from the focus that should be maintained on the actual words Congress used.
The majority also relies on Colwell v. Suffolk County Police Dept., 158 F.3d 635 (2nd Cir.1998). However, as Ms. Kellogg points out, Brief of Appellee at 10, the Second Circuit has more recently stated a different view. In Regional Economic Community v. City of Middletown, 294 F.3d 35 (2nd Cir.2002), the Second Circuit dealt with the issue whether an alcoholic or drug abuser was impaired under definitions set forth in the ADA and the Rehabilitation Act, inter alia. The Second Circuit noted that to be substantially limited under analysis of the Supreme Court in Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), required restriction from activities of central importance to most people’s daily lives. In that context the Second Circuit stated:
The function of “caring for one’s self,” we have held, “encompasses normal activities of daily living; including feeding oneself, driving, grooming, and cleaning home.” Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 871 (2d Cir.1998) (citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir.1995)). Williams confirms that such “tasks central to most people’s daily lives” constitute major life activities. 534 U.S. at [200, 122 S.Ct. at 693],
294 F.3d at 47 (emphasis added).
It has been cogently observed that “there are compelling reasons to think that driving should qualify as a major life activity. Driving appears to be ‘of central importance to most people’s daily lives.’ ” Arnold v. County of Cook, 220 F.Supp.2d 893, 895 n. 3 (N.D.Ill.2002) (quoting Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)). Unlike most of the cases dealing with this issue, Arnold gave some support for its conclusion, noting that Census Bu *1132 reau figures for 1995 showed that 91% of workers used an automobile to get to work,[2] while figures for 2000 showed that approximately 85% of Americans aged fifteen and older were licensed drivers. Id.[3]
This analysis, I submit, is more detailed and cogent than that exhibited in the appellate cases cited by the majority. It is also more directed to implementing the legislative intent. Driving is of central importance to the daily lives of a great majority of Americans, as both common experience and Census Bureau statistics tell us. Accordingly, it is a major life activity and no convincing contrary evidence or analysis is offered. Therefore, I must dissent from the ruling vacating the verdict for Ms. Kellogg on her ADA claim.

. Maj. op. at 1125 n. 1.

. U.S. Census Bureau, Statistical Abstract of the United States: 2001, Tbl. 1091 at 693.

. Driving certainly was an activity of central importance to Ms. Kellogg’s daily life. As the district judge found, she was required to travel to well sites that were a two-hour drive from the company's offices. Nor was Ms. Kellogg's dependence on driving particularly unusual for a Wyoming resident. The judge said he believes:
... there is no question that in Wyoming, where public transportation is virtually non-existent, distances between towns is [sic] measured by hours of driving, economic conditions often require residents to seek employment outside of their local community, and long winter conditions significantly limit foot or bicycle travel, driving is clearly a major life activity.
Order Granting in Part, and Denying in Part, Defendant's Motion for Summary Judgment at 7, I Aplt.App. at 33.